COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Powell


WILLIE STEWART

v.      Record No. 2182-08-1

NORFOLK DEPARTMENT OF
  HUMAN SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
MARCH 24, 2009


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge

(Rodney D. Malouf; Thomas & Associates, on brief), for appellant.

(Bernard A. Pishko, City Attorney; Martha G. Rollins, Deputy City
Attorney; Shelly F. Wood, Guardian *ad litem* for the minor child,
on brief), for appellee.


By order entered on August 19, 2008, the trial court terminated the residual parental rights

of Willie Stewart to his son, I.M., pursuant to Code § 16.1-283(B).  On appeal of this decision,

Stewart challenges the sufficiency of the evidence to support the termination.  Upon reviewing the

record and briefs of the parties, we conclude this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.[1]  See Rule 5A:27.

Under Code § 16.1-283(B), the parental rights of a parent of a neglected or abused child

may be terminated if the court finds by clear and convincing evidence that termination is in the best

interests of the child and that:

> 1.  The neglect or abuse suffered by such child presented a serious
> and substantial threat to his life, health or development; and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In Martin v. Norfolk Dep't of Human Servs., Record No. 2464-08-1, released this day,
we summarily affirmed the trial court's termination of the parental rights of I.M.'s mother.

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

I.M., the child of Stewart and Shelly Martin, was born on April 27, 1997. On December 17, 2005, when I.M. was eight years old, Martin was charged with contributing to the delinquency of I.M. It was reported that for three hours at night I.M. was locked out of the room of the boarding house where he lived with Martin. When the police responded, they knocked on the door, but Martin did not answer. Eventually, Martin came to the door and stated she had been asleep because she was sick. A neighbor reported that I.M. frequently was outside the

home alone at night. Finding Martin guilty of the charged offense, the juvenile and domestic relations district court (juvenile court) noted that it was Martin's third instance of child neglect. At Martin's sentencing hearing on February 16, 2006, the juvenile court removed I.M. from Martin's care due to chronic neglect and unsafe living conditions.

I.M. entered foster care in March 2006. At that time, I.M. displayed persistent behavioral and emotional disturbances both at home and at school. Most of I.M.'s social contact with peers at school ended in conflict. He was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). In the foster home, there were several instances of I.M. acting out in a sexual manner. He also had a history of bed-wetting. I.M. reported that his mother had left him alone at night for long periods of time, which frightened him. In an August 2006 evaluation, representatives of the Tidewater Child Development Clinic recommended that I.M. receive therapy to address his emotional distress disorder and family therapy to help him manage his disruptive behavior. I.M. is living with a foster family that is interested in adopting him.

When I.M. was removed from Martin's home and placed in foster care, Stewart was incarcerated upon a conviction of taking indecent liberties with a minor. Stewart was transported from jail and attended a dispositional hearing regarding I.M. on April 26, 2006. At the hearing, the juvenile court approved the initial foster care service plan with concurrent goals of "return to own home" and "adoption." During the period of his incarceration, Stewart had no contact of any kind with I.M. Stewart was released from jail in October 2007.

At the termination hearing on August 19, 2008, Stewart testified that he contacted the Norfolk Department of Human Services (NDHS) in December 2007 to arrange visitation with I.M. According to Stewart, the social worker advised that he had to complete certain requirements before he would be granted visitation. Stewart stated that he did not hear from the social worker again to arrange visitation. Stewart attended the same church as I.M.'s foster

family, so Stewart had seen and talked to I.M. several times at church. Stewart denied I.M. had any problems and said the child was "fine." Stewart had six children for whom he was paying no child support. Stewart testified at the hearing that I.M. could not live with him, but he was attempting to obtain another residence that would be suitable for a child.

Stewart contends the evidence was insufficient to support termination pursuant to Code § 16.1-283(B).[2] He argues that NDHS did not provide him with "reasonable rehabilitative efforts" to reduce or eliminate the neglect or abuse of I.M. and did not attempt to reunite him with his son. However, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268, 616 S.E.2d at 771.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Stewart was incarcerated for committing a crime against a child at the time of the abuse and neglect that resulted in I.M.'s placement in foster care. Stewart made no effort to contact I.M. from that time until Stewart was released from jail nineteen months later. Thereafter, Stewart's efforts to engage in a relationship with his son were limited, at most, to one telephone

---

[2] Stewart also contends the evidence did not prove the conditions required for termination pursuant to Code § 16.1-283(C), (D), or (E). However, because the trial court did not terminate Stewart's parental rights pursuant to these subsections of Code § 16.1-283, we need not consider these questions on appeal.

call to NDHS. At the time of the termination hearing, nearly two and one-half years after the foster care placement, Stewart was unable to provide a home for I.M. and refused to acknowledge the challenges the child faced. Moreover, Stewart had five other children of whom he did not have custody and he did not support. I.M. is living in a stable family environment with a foster family interested in adopting him.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Because sufficient evidence supports the trial court's decision, we summarily affirm the termination of Stewart's parental rights pursuant to Code § 16.1-283(B).

Affirmed.